May it please the Court, my name is Daniel Gonzales, I represent Appellant, the Compton Unified School District this morning. I want to start off with some great news. The student in this particular case, as far as we can tell, is now a college graduate and doing well. With that, I'd like to center the issue that is really here at BAR. The appeal raises a narrow but important question of California education law, whether a parental employment permit remains legally operative after the parent affirmatively disclaims the non-resident status that justified the permit in the first place and instead invokes residency based enrollment. The district court answered this in the affirmative, but in doing so, it displaced a thorough administrative decision, imposed a formal revocation requirement found nowhere in the California law, the permit or the statute. And it is that legal error we ask this court to correct. Is your theory that the permit was revoked because the mother lied? Is it that she said something that was a different qualification or the fact that she lied? Because there's sort of both theories, maybe in your brief, or is it one or both? Sure, Your Honor. It's about the fact that this permit was actually an exception to the residency-based, normal resident-based rule, right, which is the student attends the school in the district in which they reside. Here, she asked for this exception, and the exception was premised on the fact she didn't reside within the district. She actually resided somewhere else. Once she said, I now reside within the district, I'm entitled to full rights and benefits as someone that lives here, then she's actually saying a couple of things. I no longer need that permit. I no longer need that exception. And also the conditions precedent under which that permit was granted no longer applies. So you're not talking about the falsification of information may result in revocation? That's not what you're relying on? It's not about, it's not, we don't have to cast aspersions or say that there was some misconduct here. What's being said here is actually the precedent. I don't live in this school district, but I'd still like to attend no longer applies. So if that's your theory, why does it, you treated her as not living in the district. So I don't quite understand how, if it has nothing to do with falsification and it's just living in the district cancels it, but then you treated her as not living in the district. I don't quite understand how you can treat her statement as both showing that she lives in the district, but then not treat her as living in the district at the same time. Correct. In our brief, we talked about the fact that the district actually did do its due diligence when she said she was living in the district to confirm the same. They were unable to confirm the same and they told her, Hey, you know, there's no proof of you living in the district. Here's all the steps we took. She continued to say that she lived in the district, which suggests that she, after she was told that the student would be disenrolled as a result of not resigning the district, she continued to sort of perpetuate that particular story. I live in the district. I no longer live in LA Unified. Well, the premise of the permit was that she lived in LA Unified and needed this exception, this permit as an exception to the general rule. But if you found out that she didn't live in your district, then nothing was contrary to the permit anymore. Well, she didn't live in the district and she was also saying she wasn't living in LA Unified at that time as well. So it's unclear where she was living. But it doesn't matter, right? If she's there because of the working, if the job in the district is the hook for the permit, why does it matter where she lives? I know that that is something the district court said, that it's about employment, but employment is only part of it. I can both work and live in the district that I live, right? There's plenty of people that work within this Compton Unified School District. They may also reside in that district. No permit is necessary. It's about this exception where. Right. But you just said something about how she doesn't actually live in LA Unified. But why is I just don't understand that she either works in Compton or not, and she lives somewhere else or not. And why does it matter if it's L.A. or whatever, Ventura or I don't even know what the options would be. So, you know, part of this was that this is someone that the district had entrusted to manage their special education programs, correct? And so they they you know, this was you know, this is someone that could easily said this is where I particularly live. This is the district that's responsible for me. So this student, whenever, you know, I would argue Pally's wanted her to be in a program, found a program after this particular school year, after this time period issue, she ended up at a third school district where she remained until she finished high school. There was an agreement in place, this particular permit. And we have, you know, it's part of the record where it's an agreement between L.A. Unified who released the student and Compton Unified saying based on these particular terms, we will let you attend the Compton Unified School District. That's 413. But once that condition precedent where she's saying like, look, I, you know, I no longer live in L.A. Unified. It's unclear what purpose or what operation this particular permit had if she is not living in L.A. Unified and she's claiming she's living in Compton Unified, but Compton is unable to verify. I guess this is, I think, the question that Judge Friedland started with is you said several times she's claiming that she lived in Compton, but you didn't believe she lived in Compton. So, I mean, unless you're going to say that there's some sort of, you know, estoppel or, you know, this can be canceled as a sanction for dishonesty or something, which I don't think you're saying, then why does it matter where she claims to live? She didn't live in Compton. Your Honor, the permit that's actually found in the excerpts of record at 413 actually has certain conditions. And part of that, both districts actually say, you know, there's a change in your residency. Please go ahead and notify us of that because the district wanted to know exactly what school district might be responsible for her. There was a school district, wherever she resided at the time, there was a school district that was responsible for her. She's saying it's not L.A. Unified. She's claiming it's Compton Unified, but Compton can't confirm that she's actually residing there. Can you address this issue about, I mean, it seems to be that there's maybe a dispute or question about where exactly she lives and why that matters. But you, at the beginning, you said that the district court was basically adding a level of process to revocation that you think doesn't exist and is actually maybe the problem that you're talking about. So I just wanted to know if you could address that. Because I think the district court took the view, well, wait a minute. These things are just not self-executing. There's some process related to it, both in terms of figuring out what she was claiming or not claiming or seeking or a switch in terms of the basis for that. So if you could address that additional process problem that you talked about. Of course. Yeah. You know, the district court said, hey, you know, there's a, you can't, you know, self-effectually, as your Honor mentioned, you know, this just doesn't happen on its own. You need, there needs to be some sort of revocation process. Who knows what that is? It's not in the statute. It's not in the permit. And the district court didn't spell that out for us. But there must be some sort of form of someone announcing this is revoked as opposed to what happened here where there was a time period where she says, I am telling you that the conditions under which I sought that permit, under which the conditions that permit would apply or actually operate, give me a benefit that I wouldn't have otherwise, no longer exist. I am now here entitled to all the benefits and rights. And it really is about that operative part, right? What we're arguing is, is, you know, if we, even if we don't challenge this, what, where's the requirement for an actual formal revocation in the statute, in the permit, in the case law? What operation does that permit serve once the parent says, hey, my need for that exception no longer applies. The facts have changed now. Why does the permit say, may be revoked, may result in revocation then instead of will or must? I don't know. I mean, I don't think that that phrasing is inconsistent, Your Honor, with the facts in this particular case. It allows the part, it allows one of the parties to go ahead and revoke that. But it does sound not automatic. Well, Your Honor, so when, if you mentioned whether this has to be automatic, I think that is a little, that, that is one issue. But what we're really saying here is, do the conditions under which I needed this special exemption still operate? And the second she said, I've now moved into the district, I no longer need this exception. That's where the facts have changed. But the, but the facts, I'll be repeating the question, I guess, the facts haven't changed because you don't believe that she did move to Compton. And so at some point the district treated her like she had moved into the district and she behaved like she had moved into the district. Actually at one point. But no, you didn't, because if she lived in the district, you would owe her duties. Correct, Your Honor, and the district did proceed when she, when she said that she lived in the district, the district did proceed to treat the child just like anyone else that lived in the district. There was a brief period. Wait, when do you think that happened? I'm sorry. When are you talking about that that happened? I'm talking about that time period between January, at the beginning of January, where she, where the, where she asked the district for a special education referral assessment, the district that same day gave her one and then began the process for assessing this particular student for special education. All of this happened before the student was disenrolled in February 26, after the district had learned that she did not actually reside in the district and informed the parents. Okay, but you just said something like once we figured out that she, I think you said something like once we figured out she did live in the district, we treated her correctly. Are you talking about sometime after she was disenrolled? Oh, sorry if I misspoke. So once she represented to the district, once she represented to the district, she was living within the district. At that point, the district continued to treat her as someone that was legally entitled to or the student was legally entitled to attend the school district as someone who resided within the district. When are you talking about when you say that sentence? So the time period after she started notifying the school, the Compton Unified School District that she had moved into the school district. So this happened January 22, 2018. Your time, but before the revocation. Correct, Your Honor. Okay. I think you made it sound like somehow this was fixing the problem afterward, but that's not what you're saying. Yeah. You're correct, Your Honor. Actually, what I'm saying is when she starts representing to the school district that she now resides in the district, that she doesn't reside somewhere else, that she doesn't need to be or that the student is not attending the school district pursuant to this permit, but because she actually resides in the district, that the permit actually starts operating, starts having a function in this particular case because it's no longer necessary. And what I'm arguing is that once in January 22, 2018 when she started saying, hey, I need my address changed. I now live here. She starts taking different steps to make sure that the school district recognizes that she is now someone residing within the district. Meaning they send the police to see if she's living there. Is that what you mean? I don't understand what you're saying. That after she started, what are you saying they did because they weren't treating her like she lived in the district. They revoked her registration. Your Honor, when she enrolled as a student under this permit, under the exception, she was treated like, and it was accepted, she was treated like a student of the district. That the treatment of the student didn't change. But the case is about what happened after that. When she started saying, I actually do live in the district, and you revoked because you didn't think she did. And then you're making sentences here now that sound like you're saying we actually did treat her like she lived in the district, but you disenrolled her because you decided she didn't. So I'm just not understanding what you're saying. Sure. So let me give it a little context, Your Honor. When the parent asked that this student be treated as someone that resides within the district pursuant to this exception, the district, once it accepted her, treated her as a student attending that resided within the district. It deemed residency for that purpose. That treatment didn't change. For like five minutes? For the time that they waited for the police to come back from the house? That one day or something? Is that what you mean? Well, actually, she enrolled before the January 2018 time period that's at issue between 2018 and the end of that school year. She was attending school before then, pursuant to the permit, Your Honor. I thought that during that period, she actually requested like an intra-district transfer because even though she claimed to live in the district, she wasn't zoned for that school. So she still needed something. And it wasn't clear to me that that request was ever sort of resolved, which seemed to be important to the district, which is regardless of whether she's telling the truth, just whether she kind of had a pending application and that the purpose of the pending application was actually to switch from one permit to another. Oh, so that's a little different of a permit, Your Honor. So the inter-district permit was under 48204B, which is I don't live in the district, but I'd like to have my student attend in this district because I work here. The intra-district permit was something different. I am a resident of the district, and I would like to attend not the school I'm assigned to, not my neighborhood school, but a different school. And so she sought an intra-district permit for that. The district court seemed to think that, sort of take the view that anything after March 12th, you know, sort of as March 12th was the date of the violation and any activity post-March 12th is basically irrelevant because the denial of faith had already occurred. Are you contesting that? That any period after March 12th, I'm sorry, I don't think I understand the question. Well, I mean, just like the hospitalization and the ending of employment, that all happens after March 12th. Do you agree with that?  So if the violation happened on March 12th based on disenrollment or just failure to provide the education, those issues become irrelevant. Do you agree with that? So the violation happened after March 12th, Your Honor. What appellees have said is that the liability is part of that, right? So we've made a secondary argument that, look, you know, there's still a requirement pursuant to this permit that the district court said still operated to be able to keep. So this permit no longer applied because of the 10 day, what is it, the 10 hours a week that the parent needed to actually work there. And so we're saying that that is still relevant to the point that we're arguing that there should be no liability for that period under secondary arguments. I'll still give you a minute for rebuttal, but let's hear from the other side.  Appreciate it. Good morning, Your Honors. Alex Rodriguez for Appellees PH and Lakeisha Harris. As the court pointed out at the beginning of this, there's two appeals pending, the 24 and the 25 appeal. First, I'd like to make three quick points in regards to the 24 appeal that we were just discussing. First, on page three of CUSD's reply brief, CUSD argues without citation that students' motion to dismiss is moot since the district court eventually ruled on students' second claim for relief. Since CUSD asserts this for the first time in reply, the student has never had an opportunity to file a brief responding to that contention. Students' response entails a first impression question presented on the 2021 amendments to the Federal Rules of Appellate Procedure, namely Rule 3C-7, specifically the preposition after appealing in the final clause, and we would respectfully ask and request leave to file a supplemental brief addressing that issue if granted, if allowed. Second, CUSD's reply brief repeatedly urges this court to undertake a differential de novo review of the ALJ's 2021 administrative findings for the reasons given on students' pages 26 and 27 of our answering brief, respectfully submit the correct appellate standard of IDEA cases, fact-intensive issues such as residency, as we've been discussing here, as a review of the district court's decision for clear error. This is because 20 U.S.C. section 1415I 2C.3 provides that the district court shall render its own decision on the preponderance of the evidence. Honest appeal of district court's decision, that is, before you for review, not the administrative decision. And to the third point, I guess to the meat of CUSD's argument over residency, you know, CUSD offers arguments of residency, and we responded, I think, in every detail and every facet of that argument. Despite the result of a number of sub-issues, we believe this case is very simple, and it's based on four-step analysis. First, it is undisputed that CUSD signed off on the permit providing that PH has had residency status through June 30, 2018, based on her mother's employment. Step two, the district court explicitly and repeatedly found that CUSD never revoked the parental employment permit, and CUSD has not challenged that finding. Step three, as CUSD acknowledges on page eight of its reply brief, California law provides, and I quote, that a license remains valid until provoked, unquote. Step four, CUSD has not challenged the district court finding that CUSD simply ignored PH's parental employment residency permit. Therefore, it follows that PH's unrevoked permit remained valid through the end of the school year. It makes no difference whether CUSD could have revoked the permit based on PH's mother's leaves of absences, which as the court, you know, just pointed out, is an event that did not begin until several days after CUSD had already defaulted on its IDA obligations. It likewise makes no difference whether PH had dual school district residency during pre-hospitalizations prior to the expiration of CUSD's permit, all which occurred after CUSD, again, had defaulted on its IDA obligations. Therefore, we'd ask the court, if the court is going to hear CUSD's argument on the merits today on the 24 appeal, we should respectfully request that this court affirm the district court's finding. Can I ask you a question about the PHEA award? So the disputed issue in this case seems to be basically, you know, is this the district where she's supposed to be in school? And after litigating that issue, what you ended up with was an award of 50 hours in tutoring and nearly $800,000 in fees. Why given the nature of the issue and the modest amount of relief that was awarded, that's a very large amount. Why is that appropriate? So I got three points to that. Again, CUSD's main objection is the disparity between the amount it's paying and providing remedial tutoring to PHEA. That is the problem of CUSD's own making. The IDA contains a provision modeled after Rule 68 of the Federal Rules of Civil Procedure under which CUSD could have protected itself against this very situation. All CUSD had was to offer PHEA a minimal settlement prior to the administrative hearing, commonly known as a 10-day offer. Unless PH obtained relief in excess of that offer, CUSD would not have been liable for subsequent attorney fees that were here today on the 25 appeal, even if she refused to offer. In all my years of special education, I would never have seen a case where a school district can test IDA liability so vigorously without making such a statutory offer. CUSD only has itself to blame for these attorney fees. Second issue is that this court held a different case where CUSD, also the appealing party, comped a unified school district for Addison 598F3D1181, 9th Circuit, 2010. And I quote, a district court may award full fees even where a party did not prevail on every contention. That case cited the court's Aguero decision, which in turn cited the Supreme Court's Hensley decision. I don't think anyone disputes that the court may award full fees even when you have limited success. I think the question is, is it appropriate to do so in these circumstances? Yeah, I mean, we believe it's appropriate. You know, CUSD is arguing for a 90% reduction, you know, per offered on pages 9 and 14 of CUSD's reply to 25. The ALJ's original four findings against PH were not fully reversed, is what they argue. With respect, we disagree. CUSD's focus solely on the ALJ's 21 finding on the original issue number one. As recounted in CUSD's reply, that issue is whether CUSD failed to comply with the IDA Child Final mandates from October 27 through June 2018. Yet every time CUSD's reply briefly asserts that issue number one, the finding was never reversed and misstates the date range of issue number one. I guess related to this, what is the standard of review upon which we're reviewing a fee award issue? Yeah, I mean, we would say that the standard should be clear error as well. It should be the district court's decision, and you're reviewing that for clear error. I mean, as we note, the district court in regards to fees issued a single-space, 25-page decision where it went through all the Hensley factors in detail. So we'd have to feel that the district court actually did something wrong, not to disagree as if we're sitting doing it the first time ourselves. Correct. Can I ask? So I feel like there's a little bit of tension between your two arguments because your argument on the first appeal is this is all just completely obvious that they violated the IDEA. And I actually, if we're inclined to agree with you, I don't understand how it took so long to litigate. I mean, and so like, I think it was more than a 10-day trial proceeding before the ALJ. What happened in all that time? It seems like where she lived should have been very easy to talk about in one day or something. Can you explain what happened here? Yeah. So in the first hearing, Your Honor, we brought the issue of that here's the parental employment permit. It was valid until revoked till the end of the school year. And the ALJ, as we contend, missed that permit all completely and stuck to COSD's argument that she somehow repudiated, the first time that word repudiated ever appears is in the ALJ's decision on the first hearing and found that she somehow revoked her permit by seeking a different permit when she moved in with her ailing mother in Compton to take care of her. Even though, as I think we pointed out in our answering brief in the 24 appeal, one, there's issues with that theory. First, you know, the issue is that she couldn't have possibly, you know, had that permit granted because the person who grants that permit was out on leave. Even so, I mean, were these full, I don't know if you were counsel then, but were these like full day proceedings for more than 10 days? I believe this hearing, I could be wrong, Your Honor, but I believe this hearing occurred right after COVID. It was one of the first hearings, I think, that occurred virtually, which if you haven't done a virtual hearing through OH, it does tremendously slow down the process, which is what would be a one-day hearing maybe takes two days just because there's lags and things like that. But I think it's because student put on their full case, there was this issue that we had to address of the other permit, even though we had successfully, ultimately, at the end of the day when the district court overturned ALJ's decision, founding that the employment, parental employment permit was valid, had to go back to OH to remand on that issue. The defendants got to argue two new issues on that remand, which again, ALJ affirmed that we were the prevailing party. We had to go then go to back to district court, again, defend our decision. And there was also a premature appeal to the Ninth Circuit already on a preliminary injunction issue. Again. So part of your argument is that your client isn't dragging this out, but just that this is part of the dragging out is happening on, is in their choice to assert these defenses. That is our contention. And, you know, I think it also boards that, you know, all the issues that were briefed in the first hearing before OH have now since been reversed and student has been the prevailing party on all four issues. And so we've actually been successful on all the issues that were briefed. I'm curious if just switching back to the, to the merits case, the, the school district suggested that somehow the district court kind of added a layer of process to the revocation rule, you know, sort of rules that apply. But I'm, I think I'm understanding your argument to be no, what the district court did was actually just a factual thing that, that the permit, the operative permit wasn't revoked. End of story that the district court isn't kind of creating a legal scaffolding that doesn't exist or something along those lines. That would be correct. Your honor. The permit was there. It was never revoked. Compton simply just ignored it. And if it wasn't revoked, then it was valid. And any argument about this other permit is just the red herring respectfully. And we've, I think also addressed why that, that still fails. Even if you accept this other permit, one issue is it was, could never be granted because the person, again, like I said, was not there that had the authority to grant it because she was on medical leave. Assuming argument of that also additionally couldn't be granted because the parent didn't submit the proper utility bills. But assuming again, argument that it was granted, we'll allow that. The issue is that as I think the court was getting to with Mr. Gonzalez earlier is that I think she submitted, I'm looking at page 16 going on to 17 of our brief, you know, she submits the paperwork for the second permit on February 20th and thereafter, no, sorry, on February 23rd and then right immediately thereafter, the superintendent calls her into her office and says, this permit's not valid, you don't live in Compton. And so there was never a point in which this permit was valid. But again, assuming it was valid, the other issue is that by Compton's own regulations, when they revoked that permit later on, a few days later on March 5th in writing, one, they failed to include the provision of the notice of appeal to appeal that permit. So therefore, without that language in there, it just continued to, it continued, that permit would still have continued to be valid because there was no notice of appeal. And then there's also the issue that, sorry, I'll stop there. So just on the, so on the merits, your view is that once they disenroll her on the 23rd and then the time happens to just be up two weeks, whatever, three weeks later on March 12th, everything after that is just not really relevant because the violation basically already happened? Yes, more or less, your honor. Yes, the violation occurred on March 12th and therefore, Compton Unified School District slide bull. And then there's obviously the issue that she received not even special education, but no education from that time period to six months later, which the- When she's in a new school district doing, getting her IEP. Yeah. And I guess I reserve the rest of the time for rebuttal unless the court has other questions. Thank you. Let's put one minute on the clock for rebuttal, please. All right. I'll be quick since I have a minute. As far as the ALJ missed it, this was a very fact-intensive case as far as the, you know, we covered the 12 days that were discussed, but the judge made some credibility and the, this is ALJ Woosley. And the ALJ really heard from the parent arguing, I live within the district, I live within the district. This is something she had done through the due process hearing. So it wasn't that the, that ALJ forgot about this inter-district permit where she had said, I need this exception for my student to go to Compton Unified. But instead it was that this was the story that parent told even through the due process hearing. And also because she had to also state facts and the alternative of like, well, if I'm being untruthful about living here, this is why I might also leave her as well. This argument goes to sort of whether the litigation dragged on in ways that, or, you know, why there was a 10 day hearing, et cetera, and up and back with the district court. That's part of it, Your Honor. I'm curious, do you cite to a single case or do you even know of a case where a district, where the Ninth Circuit has found that a fee award was improper in an IDEA case? Gary on these facts, Your Honor, it goes specifically to the issue in this case of how the district court applied Hensley. Gary is the case that applies that to IDEA cases. Gary specifically says, hey, we need this degree of success because otherwise, as in this case, they'll bring four different claims, run up the clock on those, and only one will be successful. And it really creates perverse incentives. And this is a Gary that we cite, and it's beginning at 1120. And that was a reversal for, did that reverse a fee award? It's not about, it didn't reverse it, Your Honor, but it's the one that said these cuts are appropriate in IDEA cases. And it's appropriate specifically on the facts here. Thank you both sides for the helpful arguments. Thank you. This case is submitted. Our next case on calendar is Lopez v. United States, 24-5529. Each side will have 15 minutes.
judges: FRIEDLAND, MILLER, Traum